IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| METHODIST HEALTHCARE SYSTEM OF SAN ANTONIO, LTD., L.L.P., | § § § | |
| *Plaintiff,* | § § | SA-23-CV-01414-OLG |
| vs. | § § § | |
| BLUE SHIELD OF CALIFORNIA, INC, KEENAN AND ASSOCIATES, INC, | § § § | |
| *Defendants.* | § § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Orlando L. Garcia:**

This Report and Recommendation concerns Defendant Keenan & Associates, Inc.'s Motion to Dismiss Plaintiff's First Amended Complaint or Alternatively for a More Definite Statement [#18] and Motion to Dismiss of Defendant Blue Shield of California [#20]. All pretrial matters in this case have been referred to the undersigned for disposition pursuant to Western District of Texas Local Rule CV-72 and Appendix C [#29]. The undersigned therefore has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it is recommended that Defendants' motions be granted and this case dismissed for lack of subject-matter and personal jurisdiction.

**I. Background**

This case arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq.* Plaintiff Methodist Healthcare System of San Antonio, Ltd., L.L.P. ("Methodist") is a healthcare system located in the Greater San Antonio area of

Texas providing medical services to the San Antonio community.  (Am. Compl. [#15], at ¶ 8.)
Methodist has a Hospital Agreement for PPO/POS Network Participation with Blue Cross Blue
Shield of Texas ("BCBSTX") specifying the terms and conditions of treating patients with any
BCBS health plans and the rate of reimbursement for the provision of medically necessary
services to those patients.  (*Id.* at ¶ 9.)

This dispute concerns Methodist's provision of hospital services to two subscribers of
health insurance through Defendant Blue Shield of California ("BSCA"), a California-based
BCBS health plan Methodist alleges is covered by the Hospital Agreement with BCBSTX.  (*Id.*
at ¶ 12.)  The Amended Complaint refers to the subscribers/patients at issue as B.R. and A.M.A.
(*Id.* at ¶¶ 13, 23.)  Methodist claims BSCA and its plan administrator, Keenan and Associates,
Inc. ("Keenan"), wrongfully refused to pay Methodist for the patients' treatment on the basis that
the treatment was not medically necessary.  (*Id.*)  Methodist asserts that Defendants' conduct
violates ERISA.  (*Id.* at ¶¶ 37–45.)  Methodist alternatively pleads breach of contract to the
extent that the health plans at issue are not subject to ERISA.  (*Id.* at ¶ 47.)

Defendants each filed a motion to dismiss Methodist's Amended Complaint.  Methodist
filed responses to the motions [#21, #23], to which Defendants filed their replies [#25, #27].
Plaintiff also filed a sur-reply [#28] regarding Keenan's motion.  In its motion, Kennan argues
the Court should dismiss the Amended Complaint pursuant to Rule 12(b)(1) for lack of subject
matter jurisdiction, Rule 12(b)(2) for lack of personal jurisdiction, Rule 12(b)(3) for improper
venue, Rule 12(b)(6) for failure to sufficiently plead the ERISA and breach-of-contract claims,
and Rule 12(b)(7) for failure to join a necessary and indispensable party.  BSCA adopts all of
Keenan's arguments for dismissal in its separate motion to dismiss and advances additional Rule
12(b)(1) arguments regarding subject-matter jurisdiction.  Both Defendants alternatively move

for a more definite statement pursuant to Rule 12(e).  Methodist requests leave to amend its pleadings if the Court finds any of Defendants' arguments to have merit.  Because Defendants challenge the Court's subject matter jurisdiction, the undersigned is required to first evaluate Defendants' Rule 12(b)(1) arguments.  *McLin v. Twenty-First Jud. Dist.*, 79 F.4th 411, 415 (5th Cir. 2023).

**II.  Subject-Matter Jurisdiction Over ERISA Claim**

Defendants seek dismissal of Methodist's ERISA claim for lack of standing pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.  The District Court should find that the jurisdictional record establishes that A.M.A.'s plan is not an ERISA plan and that Methodist has failed to satisfy its burden to demonstrate derivative standing to bring an ERISA claim on behalf of B.R.

**A.    Legal Standard**

"The standing doctrine defines and limits the role of the judiciary and is a threshold inquiry to adjudication."  *McClure v. Ashcroft*, 335 F.3d 404, 408 (5th Cir. 2003).  "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues."  *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  The concept of standing encompasses both constitutional and other concerns, such as prudential and contractual standing.  *Id.*  A plaintiff must have constitutional standing as required by Article III of the Constitution.  *St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533, 539 (5th Cir. 2009).  Prudential standing relates to whether a grievance falls within the zone of interests protected by the statute invoked and evaluates whether a plaintiff is asserting his or her own legal rights rather than the interests of third parties.  *Id.*  Contractual standing concerns whether a party has a right to enforce a contract and can be referred to as derivative or third-party standing.  *See Maxim*

*Crane Works, L.P. v. Zurich Am. Ins. Co.*, 11 F.4th 345, 350 (5th Cir. 2021) (per curiam). Whether Methodist has derivative standing is not a question of constitutional standing but rather implicates contractual concerns. *Mem'l Hermann Health Sys. v. Pennwell Corp. Med. & Vision Plan*, No. CV H-17-2364, 2017 WL 6561165, at *5 (S.D. Tex. Dec. 22, 2017).

Methodist brings its ERISA claim pursuant to Section 502(a)(1)(B) of ERISA, which authorizes a suit by a plan participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Healthcare providers do not have standing to sue to collect benefits under an ERISA plan, but they may obtain assignments from their patients and thereby have derivative standing to bring ERISA actions to recover benefits. *Mem'l Hermann Health Sys.*, 2017 WL 6561165, at *5 (citing *N. Cypress Med. Ctr. Operating Co., Ltd. v. Cigna Healthcare*, 781 F.3d 182, 191 & n.31 (5th Cir. 2015)); *see also Harris Methodist Fort Worth v. Sales Support Servs., Inc. Emp. Health Care Plan*, 426 F.3d 333–34 (5th Cir. 2005) ("It is well established that a healthcare provider, though not a statutorily designated ERISA beneficiary, may obtain standing to sue derivatively to enforce an ERISA plan beneficiary's claim."). Although Methodist is not a plan participant or beneficiary of an ERISA plan, it alleges it has derivative standing to enforce the terms of the plans based on B.R.'s and A.M.A.'s assignment of benefits and rights to Methodist upon admission for treatment to the hospital. (Am. Compl. [#15], at ¶¶ 41, 43, 48, 95.)

Initially, Defendants made two arguments regarding Methodist's assertion of derivative standing. First, Defendants argued Methodist fails to plead a valid assignment of rights because it does not describe the alleged assignments in detail and did not attach the assignments to its Amended Complaint. Second, Defendants argue that even if they had attached assignments, any

attempted assignment would be invalid because the plans at issue include anti-assignment provisions.

After considering the initial motions and response, the undersigned construed Defendants' challenge as a factual, not a facial, attack on jurisdiction. A detailed explanation supporting that conclusion can be found in the undersigned's Order directing the parties to supplement the jurisdictional record. (Order [#33].) In that Order, the undersigned concluded that in the context of a factual attack Methodist cannot survive dismissal without offering evidence of a valid assignment of benefits. *See Cell Sc. Sys. Corp. v. La. Health Serv.*, 804 Fed. App'x 260, 264 (5th Cir. 2020) (explaining that to survive a factual attack on jurisdiction based on the validity of assignment of benefits, plaintiff "was required to put forth evidence of valid and enforceable assignments of benefits from the ERISA plan participants and/or beneficiaries"). In that same Order, the undersigned gave Methodist the opportunity to supplement the jurisdictional record with the assignments and for the parties to provide additional briefing on the anti-assignment clauses identified by Defendants.

Methodist has now provided the Court with the two assignments at issue. (Assignments [#36-1, #36-2].) The parties have also provided the requested additional briefing [#36, #40, #41, #43].) Having considered this additional evidence and briefing, the undersigned finds that the jurisdictional record establishes that (1) only B.R.'s plan is a plan governed by ERISA that could be the basis of an ERISA claim; (2) B.R. executed an assignment of benefits to Methodist that theoretically could confer derivative standing on Methodist to pursue an ERISA claim; but (3) B.R.'s plan prohibits such assignment. Methodist therefore lacks derivative standing to pursue B.R.'s ERISA claim, and the District Court should dismiss Methodist's ERISA claim for lack of subject-matter jurisdiction.

**B.      Only B.R.'s plan is an ERISA plan.**

To have derivative standing to assert an ERISA claim on behalf of B.R. and A.M.A., these plans must be governed by ERISA.  At various places in its briefing, Methodist argues that Defendants have failed to establish whether these plans are or are not ERISA plans.  Yet it is Methodist's burden to demonstrate by a preponderance of the evidence that it has derivative standing to sue on behalf of B.R. and A.M.A. under ERISA.  *Texas v. United States*, 50 F.4th 498, 513 (5th Cir. 2022).  This includes demonstrating that the plans are in fact governed by ERISA.  *See Shearer v. Sw. Serv. Life Ins. Co.*, 516 F.3d 276, 279–80 (5th Cir. 2008) (dismissing case for lack of subject-matter jurisdiction where plaintiff failed to satisfy burden of demonstrating intent to establish ERISA plan).

ERISA applies to any "employee benefit plan" established or maintained by any employer or employee organization engaged in commerce, or in any industry or activity affecting commerce.  29 USC § 1003(a).  There are specific factors utilized by the Fifth Circuit in determining whether a healthcare benefits plan is an ERISA plan.  *Peace v. Am. Gen. Life Ins. Co.*, 462 F.3d 437, 439 (5th Cir. 2006) (identifying three-factor test considering whether (1) the plan exists; (2) the plan falls within the safe harbor provision established by the Department of Labor; and (3) the employer established or maintained the plan with the intent to benefit employees).  Although the parties do not address these factors in their briefing, there can be no real question as to whether ERISA governs B.R.'s plan.  *See Story v. Aetna Life Ins. Co.*, No. 4:13-CV-149-A, 2013 WL 4050160, at *3 (N.D. Tex. Aug. 8, 2013) (noting that plan documents clearly indicated intent to create ERISA plan).

Methodist alleges that B.R.'s plan is an ERISA plan and that Keenan is B.R.'s "employer self-funded group administrator."  (Am. Compl. [#15], at ¶ 17.)  The plan documents for B.R.'s

plan attached to BSCA's motion to dismiss explain that the plan "is designed to provide eligible Employees of Prospect Medical Holdings, Inc., and their eligible Dependents" with healthcare benefits and identifies Keenan as the claims administrator of the plan.  (B.R. Plan [#20-2], at 10, 26.)  The plan clearly states that "[i]t is the intention of the Plan Sponsor to establish hereby a program of benefits constituting an 'Employee Welfare Benefit Plan' under the Employee Retirement Income Security Act of 1974 and any amendments thereto."  (*Id.* at 17.)  Moreover, Article XVI of the plan is entitled "ERISA" and states the following:

> The Plan is set forth in the insert name of Prospect Medical Holdings, Inc. Medical/Prescription Drug Plan Document/Summary Plan Description which is an employee benefit welfare plan under ERISA because it pays for certain medical care required as a result of non-Occupational Injury and Illness which are Incurred by a Participant or other Covered Person. The Plan would be commonly considered a "group health plan."

(*Id.* at 138.)  Defendants also concede that B.R.'s plan is an ERISA plan.

The parties appear to agree that A.M.A's plan is in contrast not an ERISA plan. (Methodist Supplemental Brief [#36], at 2 ("By Defendant [BSCA]'s own admission, patient A.M.A.'s claim is conclusively not covered by ERISA.").)  A.M.A's plan documents establish that it is a "self-funded *governmental* group health plan . . . exempt from the requirements of ERISA," aside from certain amendments to ERISA, such as HIPAA.  (A.M.A. Plan [#20-3], at 96 (emphasis added).)  ERISA is not applicable to "government-sponsored health plans." *Bigelow v. United Healthcare of Miss., Inc.*, 220 F.3d 339, 344 (5th Cir. 2000) (citing 29 U.S.C. § 1003(b)(1)).  Because Methodist has not established that A.M.A's plan could be governed by ERISA, the undersigned only considers the parties' arguments regarding derivative standing under ERISA with respect to B.R.'s plan.  The Court will address Methodist's alternative breach-of-contract claim on behalf of A.M.A. *infra*.

**C.    B.R.'s assignment of benefits in favor of Methodist is prohibited by the plan.**

The record establishes that B.R. executed an assignment of benefits in favor of Methodist.   Methodist has provided the Court with a contract executed by B.R. entitled "Conditions of Admission and Consent for Outpatient Care," which contains an assignment of benefits clause.   (Assignment [#36-2, at 6–7].)[1]   The assignment clause states that the patient "assigns all of his/her rights and benefits under existing policies of insurance providing coverage and payment for any and all expenses incurred as a result of services and treatment rendered by the Provider" and "authorizes direct payment to the Provider of any insurance benefits otherwise payable to or on behalf of Patient for the hospitalization or for outpatient services, including emergency services, if rendered."   (*Id.*)   Furthermore, the assignment clause "irrevocably appoint[s] the Provider as [the patient's] authorized representative to pursue any claims, penalties, and administrative and/or legal remedies for any and all benefits due [to the patient] for the payment of charges associated with services and treatment rendered by the Provider." (*Id.*)  Methodist contends this assignment confers it with derivative standing to sue Defendants under ERISA on behalf of B.R.

Defendants argue that an anti-assignment provision in B.R.'s healthcare plan invalidates this assignment.   A federal court does not have jurisdiction to hear a case when a healthcare provider lacks standing under ERISA to bring that case due to a valid anti-assignment clause. *Dialysis Newco, Inc. v. Cmty. Health Sys. Group Health Plan*, 938 F.3d 246, 250 (5th Cir. 2019) (citing *LeTourneau Lifelike Orthotics & Prosthetics, Inc. v. Wal-Mart Stores, Inc.*, 298 F.3d 348,

---

[1] BSCA objects to the admissibility of the assignment arguing it is not properly authenticated.   Methodist attached a business records affidavit to its additional briefing filed in response to BSCA's evidentiary objections and other arguments and has therefore now authenticated the contracts.  (Aff. [#42-1], at 8, 22.)  The objection is overruled.

353 (5th Cir. 2002) (affirming denial of standing under ERISA based on anti-assignment clause)).  Clause 1.15 of B.R.'s healthcare plan contains the following anti-assignment provision:

> Legal rights and rights to payments under the Plan, either before or after services and supplies have been provided, may not be assigned. A direction to pay a Health Care Provider or other third party is not an assignment of any right under the Plan or of any legal or equitable right to institute any court proceeding.  Health Care Providers are not, and shall not be construed as, either "participants" or "beneficiaries" under the Plan and have no rights to receive benefits from the Plan or pursue legal causes of action on behalf of (or in place of) the Participant or other Covered Persons under any circumstances.

(B.R. Plan [#20-2], at 19.)

When interpreting ERISA plans, a court should read a provision according to its plain meaning and how an "average plan participant" would likely understand it.  *Dialysis Newco*, 938 F.3d at 251 (quotation omitted).  Applying plain meaning, the assignment clause in B.R.'s plan is unambiguous and prohibits assignment of benefits or the right to pursue legal causes of action on the patient/subscriber's behalf.  The anti-assignment clause in B.R.'s plan states that "[l]egal rights and rights to payment . . . may not be assigned" and that health care providers "have no rights to receive benefits from the Plan or to pursue legal causes of action on behalf of" the contracting party.  (B.R. Plan [#20-2], at 19.)

In response, Methodist argues that Defendants are estopped from relying on the anti-assignment provision in B.R.'s plan in seeking dismissal of its ERISA claim because BSCA waived its right to enforce the anti-assignment language through its active involvement in the claims handling process and failure to raise the provision to Methodist at any prior point before filing its motion to dismiss.  Prudential standing arguments may be waived if not timely asserted. *Bd. of Miss. Levee Comm'rs v. EPA*, 674 F.3d 409, 417–18 (5th Cir. 2012).  More specifically, an insurance provider can waive an anti-assignment provision by failing to assert it while

negotiating a claim.  *Hermann Hosp. v. MEBA Med. and Benefits Plan*, 959 F.2d 569, 574 (5th Cir. 1992) (*Herman II*).  In *Hermann II*, the district court held that—by waiting three years after the plaintiff hospital first requested payment under an insurance plan to assert an anti-assignment clause to deny a claim—the benefit plan was estopped from relying on the clause.  *Id.*  Yet the Fifth Circuit in *Cell Science* held that invoking an anti-assignment clause to challenge <u>standing</u> is distinct from invoking anti-assignment to <u>deny a claim</u> and, in circumstances similar to this case, concluded there was no waiver.  *Cell Sci. Sys. Corp. v. La. Health Serv.*, 804 Fed. App'x 260, 265 (5th Cir. 2020) ("Unlike the plan in *Hermann II*, here, BCBSLA did not invoke the anti-assignment clause to deny the claim; it invoked the anti-assignment claim only as a challenge to jurisdiction.").  As discussed in the undersigned's previous Order [#33], *Cell Science* is not a published opinion and does not have binding, precedential value.  However, it is persuasive authority on how the Fifth Circuit might rule if faced with the question presented here.  Therefore, consistent with the analysis of the Fifth Circuit in *Cell Science*, the District Court should find that Methodist cannot establish estoppel or waiver of B.R.'s anti-assignment provision for purposes of challenging Methodist's derivative standing under ERISA.  *See Windmill Wellness Ranch, L.L.C. v. Meritain Health, Inc.*, No. SA-20-CV-01388-XR, 2021 WL 2635845, at *3 (W.D. Tex. June 25, 2021) (emphasizing distinction between standing and claims handling in evaluating estoppel and enforcing "plain and clear" anti-assignment provision and dismissing ERISA claim for lack of derivative standing).

"To establish an ERISA-estoppel claim, the plaintiff must establish: (1) a material misrepresentation; (2) reasonable and detrimental reliance upon the representation; and (3) extraordinary circumstances."  *Mello v. Sara Lee Corp.*, 431 F.3d 440, 444–45 (5th Cir. 2005).  Methodist has not asserted that Defendants ever took an inconsistent position as to Methodist's

ability to assert derivative standing as an assignee in a federal lawsuit on which it reasonably relied. *See also Cell Sci. Sys. Corp.*, 804 Fed. App'x at 265 (finding no material misrepresentation or reasonable reliance with respect to anti-assignment provision where health insurer delayed in invoking provision to deny claim not in challenging derivative standing).

Nor has Methodist established waiver.  To prove waiver, Methodist must establish that the Defendants voluntarily or intentionally relinquished a known right. *Pitts By & Through Pitts v. Am. Sec. Life Ins. Co.*, 931 F.2d 351, 357 (5th Cir. 1991).  "There is nothing to indicate Defendants have ever recognized, acknowledged, or been aware of Methodist's assertion of its standing to sue as an assignee under ERISA" prior to Methodist filing this lawsuit. *See Windmill Wellness Ranch*, 2021 WL 2635845, at *5.

In addition to re-urging its estoppel argument, Methodist's supplemental briefing argues that Texas law prohibits the inclusion of anti-assignment clauses in healthcare plans.  *See* Tex. Ins. Code § 1204.053(a).  Yet Methodist cannot invoke Texas law to challenge the anti-assignment provision in B.R.'s plan because the preponderance of the evidence establishes that this plan is governed by ERISA, not state law.  Because B.R.'s plan is governed by ERISA under the clear terms of the plan, the prohibition on anti-assignment clauses in the Texas Insurance Code has no bearing on the determination of Methodist's derivative standing to pursue an ERISA claim on behalf of B.R.  *See Dialysis Newco*, 938 F.3d at 259–60 (holding that Tennessee statute purporting to invalidate anti-assignment clause in benefits plan was preempted by ERISA).

In sum, because B.R.'s plan contains a valid anti-assignment provision, Methodist has not satisfied its burden to establish derivative standing under ERISA.  Therefore, the District Court should dismiss Methodist's ERISA claim against both Defendants for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

### III.  Breach-of-Contract Claim

The only remaining claim is Methodist's breach-of-contract claim asserted on behalf of A.M.A.[2]  Methodist's Amended Complaint pleads an alternative breach-of-contract claim "[t]o the extent that the health plans are not subject to ERISA."  (Am. Compl. [#15], at ¶ 47.)  As noted *supra*, A.M.A.'s plan is not an ERISA plan.  Keenan is only named as a Defendant as the ERISA administrator of B.R.'s plan.  (Am. Compl. [#15], at ¶ 3 ("Keenan administers one of the Subscriber's self-funded group plans); B.R. Plan [#20-2], at 26, 101.)  As Keenan is not a party to A.M.A's plan, Methodist's claim for breach of contract can only be asserted against BSCA.

Defendants move for dismissal of Methodist's breach-of-contract claim for lack of diversity jurisdiction and for lack of personal jurisdiction over BSCA.  Although there is complete diversity of citizenship among the relevant parties, this claim should be dismissed for lack of personal jurisdiction over BSCA.

### A.    Diversity Jurisdiction

Defendants argue that there is no diversity jurisdiction over Methodist's breach-of-contract claim because there is not complete diversity among the parties.  Methodist bears the burden of specifically alleging each party's citizenship, and a failure to satisfy this requirement mandates dismissal for lack of subject-matter jurisdiction.  *Stafford v. Mobil Oil Corp.*, 945 F.2d 803, 804–05 (5th Cir. 1991); *McGovern v. Am. Airlines, Inc.*, 511 F.2d 653, 654 (5th Cir. 1975).  BSCA argues that Methodist's allegations are insufficient to satisfy its burden regarding the pleading of the citizenship of the parties.  This is a facial, not factual, attack on jurisdiction.

---

[2] Methodist cannot pursue a breach-of-contract claim on behalf of B.R. because this claim is preempted by ERISA.  *See Degan v. Ford Motor Co.*, 869 F.2d 889, 893 (5th Cir. 1989) (Section 502(a)(1)(B) provides "an exclusive federal cause of action" for resolution of claims to recover benefits under ERISA plan).  *See also Ramirez v. Inter–Continental Hotels*, 890 F.2d 760, 764 (5th Cir. 1989) (affirming district court's sua sponte dismissal of the plaintiff's state law claims because such claims were preempted by ERISA).

Accordingly, the Court accepts Methodist's allegations as true for purposes of ruling on BSCA's jurisdictional challenge. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).

In its motion, BCSA argues that the citizenship of the subscriber, not Methodist, is the relevant citizenship for purposes of diversity jurisdiction. BSCA argues that federal diversity jurisdiction is determined by the citizenship of the assignor *unless* an assignment has been created in an "improper" or "collusive" manner. Defendants misstate the law on diversity jurisdiction and assignments. The inverse is true. "A district court shall not have jurisdiction over a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court." 28 U.S.C. § 1359. An assignor's citizenship is considered in evaluating diversity jurisdiction where an assignment was made to collusively or improperly manufacture diversity of citizenship. *Delgado v. Shell Oil Co.*, 231 F.3d 165, 178 (5th Cir. 2000) (explaining that the application of § 1359 has "generally been restricted to circumstances involving assignment of interests from non-diverse to diverse parties to collusively create diversity jurisdiction"). There is no alleged collusion or attempt to manufacture diversity jurisdiction here. Regardless, Methodist pleads that the "BSCA Subscribers whom Methodist treated in this case" are Texas residents and that Methodist itself is also a citizen of the State of Texas, while BSCA is a citizen of California. (Am. Compl. [#15], at ¶ 4.)

BSCA alternatively argues that Methodist fails to properly plead its own citizenship because it only alleges the citizenship of its general partners not its limited partners. Methodist, as a limited liability partnership, must specifically allege the citizenship of each of its limited and general partners, as a limited partnership assumes the citizenship of its partners. *Corfield v. Dallas Glen Hills, L.P.*, 355 F.3d 853, 856 n.3 (5th Cir. 2003). *See also Settlement Funding,*

*L.L.C. v. Rapid Settlements, Ltd.*, 851 F.3d 530, 536 (5th Cir. 2017) ("A party seeking to establish diversity jurisdiction must specifically allege the citizenship of every member of every LLC or partnership involved in a litigation.").   When partners or members of a limited partnership are themselves entities or associations, each layer of members or partners must be traced until one arrives at an entity not a limited partnership.  *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 397–98 (5th Cir. 2009).

Methodist's Amended Complaint alleges that its general partner is a citizen of Texas and Tennessee.   (Am. Compl. [#15], at ¶ 4.)  There is no reference in the Amended Complaint to any limited partners.  Nor does Methodist identify its general partner by name or whether it is an individual or another entity requiring inquiry into its own partners or members.   Moreover, Methodist did not timely file the required disclosures clarifying citizenship when it filed its initial pleading.  Rule 7.1 of the Federal Rules of Civil Procedure mandates that, in diversity cases, each party must "file a disclosure statement" with its first pleading and that the statement "name—and identify the citizenship of—every individual or entity whose citizenship is attributed to that party."  Fed. R. Civ. P. 7.1(a)(2).  The undersigned therefore ordered Methodist to supplement the record with a citizenship disclosure statement to comply with the Federal Rules and allow the Court to evaluate diversity jurisdiction.

Methodist filed the ordered citizenship disclosure statement [#35], which states that Methodist is a Texas limited partnership with two general partners: Columbia/HCA Corporation of Central Texas, which is a citizen of both Tennessee and Texas; and Methodist Healthcare Ministries of South Texas, Inc., which is a citizen of Texas.  Methodist also states that it has four limited partners: MGH Medical, Inc.; W & C Hospital, Inc.; Village Oaks Medical Center, Inc.; San Antonio Regional Hospital, Inc.  All the limited partners are citizens of both Texas and

Tennessee.  Again, BSCA is a citizen of California.  (Am. Compl. [#15], at ¶ 4.)  Based on these assertions, which the Court accepts as true for purposes of ruling on a facial challenge to diversity jurisdiction, the District Court should find there is complete diversity among the parties.

**B.      Personal Jurisdiction**

BSCA also seeks dismissal of Methodist's Amended Complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.  Federal Rule of Civil Procedure 4(e) permits a district court to assert personal jurisdiction over a nonresident in a diversity action to the extent allowed under the law of the state where the district court sits.  The Texas Supreme Court has interpreted the language of its long-arm statute to reach as far as the federal constitutional requirements of due process will allow.  *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990).  Due process requires that (1) the defendant have established "minimum contacts" with the forum state; and (2) the exercise of personal jurisdiction does not offend "traditional notions of fair play and substantial justice."  *Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993) (quoting *Asahi Metal Indus. Co., Ltd. v. Superior Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 113 (1987).)

Where a non-resident defendant challenges personal jurisdiction, the plaintiff bears the burden of making a *prima facie* showing of jurisdiction; the plaintiff need not establish jurisdiction by a preponderance of the evidence.  *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006).  Once the plaintiff makes a *prima facie* case of personal jurisdiction, the burden shifts to the defendant to demonstrate that exercising jurisdiction over the defendant would be so unfair and unreasonable as to violate due process of law.  *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999).

In determining whether personal jurisdiction exists, "the allegations of the complaint are taken as true to the extent they are not contradicted by affidavits." *Wyatt v. Kaplan*, 686 F.2d 276, 282–83 n.13 (5th Cir. 1982). "The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Allred v. Moore & Peterson*, 117 F.3d 278, 281 (5th Cir. 1997) (internal citation and quotation omitted). "When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, it must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts posed by the affidavits." *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999).

Consistent with these standards, the Court must accept the following allegations as true for purposes of evaluating personal jurisdiction. BSCA is a California corporation incorporated under the laws of the State of California with its principal place of business in California. (Am. Compl. [#15], at ¶ 2.) BSCA is a licensee of the Blue Cross and Blue Shield Association and is licensed to offer Blue Cross and Blue Shield branded health insurance plans in the State of California. (*Id.*) BSCA does not maintain a regular place of business in Texas and does not have a designated agent for service of process. (*Id.*) BSCA's subscribers are not confined to the State of California and routinely receive hospital services in other states, including Texas, for which BSCA is responsible. (*Id.*)

Additionally, when Methodist treats a subscriber who has a Blue Cross Blue Shield plan administered by a Blue Cross licensee other than Blue Cross Blue Shield of Texas, Methodist's request for payment is handled through a system known as the "BlueCard Program." (*Id.* at ¶ 11.) Under this program, Methodist submits its claim to Blue Cross Blue Shield of Texas for the services it provided and then Blue Cross Blue Shield of Texas reviews the claim, determines the

amount payable, and forwards the claim to "the Home Plan," here BSCA. (*Id.*) BSCA then applies the subscriber's benefits, makes coverage determinations, and either denies or approves payment. (*Id.*) Blue Cross Blue Shield of Texas then transmits the Home Plan's decision and payment to Methodist. (*Id.*) The payment rates specified in the agreement between Blue Cross Blue Shield of Texas and Methodist governs the amount of reimbursement regardless of whether the subscriber is a participant in an out-of-state Blue Cross Blue Shield Plan. (*Id.*) BSCA argues that these allegations do not give rise to personal jurisdiction. The undersigned agrees.

There are two types of personal jurisdiction—general and specific. General jurisdiction permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the conduct at issue in the underlying suit. *Walden v. Fiore*, 571 U.S. 277, 283 n.6 (2014). Based on its jurisdictional allegations, Methodist cannot establish that BSCA is subject to the general jurisdiction of the State of Texas. Only in "exceptional cases" will an out-of-state corporation be deemed to have contacts with the forum state that are "so substantial and of such a nature as to render the corporation at home" in that forum. *Frank v. P N K (Lake Charles) L.L.C.*, 947 F.3d 331, 338 (5th Cir. 2020) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 139 n.19 (2014)). No such allegations are present here. Nor has Methodist attempted to argue that this Court has general jurisdiction over BSCA.

Where the defendant's contacts are not sufficient to establish general jurisdiction, a court may still exercise specific personal jurisdiction if (1) the defendant purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; and (2) the controversy arises out of or is related to defendant's contacts. *Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colo.*, 615 F.3d 364, 369 (5th Cir. 2010). The touchstone of either inquiry is whether the "defendant *himself*" has purposefully availed himself

of the benefits of the forum; "it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden*, 571 U.S. at 284–85 (emphasis in original).  When a defendant "purposefully avails itself of the privilege of conducting activities within the forum State, it has clear notice that it is subject to suit there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (internal citation and quotation omitted).

Methodist argues that this Court has personal jurisdiction over BSCA because it conducts substantial business in Texas by insuring and administering health plans and policies that cover Texas residents and that a substantial part of the events or omissions giving rise to Methodist's claims occurred here.  Yet, "merely providing out-of-state health coverage to insureds does not subject an insurer to personal jurisdiction in every foreign state in which an insured happens to obtain medical services." *St. Luke's Episcopal Hosp. v. La. Health Serv. & Indem. Co.*, No. CIV.A. H-08-1870, 2009 WL 47125, at *8 (S.D. Tex. Jan. 6, 2009) (citing *Perez v. Pan Am. Life Ins. Co.*, 96 F.3d 1442, 1996 WL 511748, at *2 (5th Cir. Aug. 20, 1996)).  There must be "purposeful availment" of the benefits of conducting business in the State of Texas for this Court to find specific personal jurisdiction over BSCA.

In *St. Luke's*, the district court found that Blue Cross Blue Shield of Louisiana did not subject itself to the specific personal jurisdiction of Texas courts by authorizing treatment in Texas, tendering partial payment for medical services in Texas, or participating in the same "Blue Card Program" referenced in Methodist's pleadings.  *Id.* at *2.  The Fifth Circuit has cited the decision in *St. Luke's* with approval, expressly rejecting the argument that authorizing out-of-state health care treatment and partially paying a bill for that treatment gives rise to specific jurisdiction.  *Choice Healthcare*, 615 F.3d at 369 (making payments because an insured

"independently and without encouragement from Kaiser presented to a Louisiana hospital for urgent care while visiting Louisiana" is not purposeful availment).  Moreover, Methodist's factual allegations assert that Blue Cross Blue Shield of Texas (as the Blue Cross entity responsible for transmitting coverage decisions and payment), not BSCA, was the party who communicated the denial of A.M.A.'s claim to Methodist both verbally during various phone calls and in writing.  (Am. Compl. [#15], at ¶¶ 26–31.)  BSCA merely made the decision regarding Methodist's appeal of the denial of coverage for lack of medical necessity.  (*Id.* at ¶ 31.)

The Fifth Circuit also embraced *St. Luke's* analysis with respect to the nationwide Blue Card Program, finding that joining a national organization allowing for coverage and processing in member states did not give rise to a Texas contract or a substantial connection to Texas and was not purposeful availment of the benefits of the forum state.  *Choice Healthcare*, 615 F.3d at 371–72 ("[D]efendant's membership in Multiplan, which in turn contracted with the plaintiff, is not enough to show that defendant purposefully availed itself of the benefits and privileges of the forum state.").  Finally, the Fifth Circuit also rejected the application of the Supreme Court's stream-of-commerce theory to the issuance of insurance policies giving rise to an obligation to pay policy benefits for out-of-state medical care.  *Id.* at 372–33 (such facts "simply do not fit the stream of commerce model" of personal jurisdiction).

Methodist's response to BSCA's personal-jurisdiction challenge primarily argues that the assertion of personal jurisdiction is proper because under ERISA, a statute providing for nationwide service of process, a defendant need only have minimum contacts with the United States (rather than the State of Texas specifically), and the Court may exercise pendent personal jurisdiction over Defendants as to the state-law claim.  *See Busch v. Buchman, Buchman &*

*O'Brien, Law Firm*, 11 F.3d 1255, 1258 (5th Cir. 1994) ("[W]hen a federal court is attempting to exercise personal jurisdiction over a defendant in a suit based upon a federal statute providing for nationwide service of process, the relevant inquiry is whether the defendant has had minimum contacts with the United States."). Methodist appears to concede, however, that in cases involving only state-law causes of action for breach of contract, such as those discussed herein, BSCA's contact with the State of Texas would not satisfy the requirements of general or specific personal jurisdiction.

In light of the undersigned's recommendation that this case be dismissed for lack of subject-matter and personal jurisdiction, the Court need not consider (and the undersigned has not considered) Defendants' additional arguments for dismissal of Methodist's claims for improper venue, failure to state a claim, and failure to join a necessary party. The Court also need not consider the parties' arguments regarding the derivative standing of Methodist to sue on behalf of A.M.A. (and relatedly whether the Texas Insurance Code provision on anti-assignment clauses voids the anti-assignment clause in that contract). The motions to dismiss can be decided on the limited grounds detailed herein.

### IV.  Conclusion and Recommendation

Having considered the motions, responses and replies, the parties' supplemental briefing, the jurisdictional record, the pleadings, and the governing law,  the undersigned **recommends** that Defendant Keenan & Associates, Inc.'s Motion to Dismiss Plaintiff's First Amended Complaint or Alternatively for a More Definite Statement [#18] and Motion to Dismiss of Defendant Blue Shield of California [#20] be **GRANTED** as set forth herein. Specifically, the District Court should dismiss Methodist's ERISA claim for failure to establish derivative

standing under Rule 12(b)(1) and Methodist's breach-of-contract claim for lack of personal jurisdiction.  No claims should survive Defendants' motions.

## V.  Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Objections are limited to no more than 20 pages unless leave of court is granted.  The party shall file the objections with the Clerk of Court and serve the objections on all other parties.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.  *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root*, *Inc.,* 200 F.3d 335, 340 (5th Cir. 2000).  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415,

1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1).

SIGNED this 3rd day of March, 2025.


ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE